FILED
2024 Jun-07 PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ANDREW SCARLETT, *et al.*,

Plaintiffs,

v.

TERRY HEATON, *et al.*,

Defendants.

Case No. 2:23-cv-935-GMB

**MEMORANDUM OPINON AND ORDER**

Plaintiffs Andrew Scarlett and Samantha Scarlett bring claims pursuant to 42 U.S.C. § 1983 and Alabama state law against the City of Warrior, Alabama ("Warrior") and Officers Terry Heaton and Ricky Pridmore, individually and in their official capacities, arising out of an encounter at a Huddle House restaurant located on Warrior Jasper Road. Doc. 1. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 25. Before the court is Warrior's Motion to Dismiss. Doc. 10. The motion is fully briefed and ripe for decision. Docs. 11, 21, 27. For the following reasons, the motion is due to be granted.

## I. STANDARD OF REVIEW

Warrior moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes the dismissal of all or some of the claims in a

complaint if the allegations fail to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," which is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes that the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that a plaintiff can prove facts she has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Assoc. Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id*. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## II. STATEMENT OF FACTS

The allegations in the complaint relate both to the specific incident giving rise to this action and to Warrior's alleged longstanding constitutional violations and deliberate indifference to constitutional rights. Doc. 1. Specifically, the complaint states that "[t]his is a Fourth Amendment unconstitutional seizure, excessive force, false imprisonment case as well as deliberate indifference to medical care filed on behalf of Andrew Scarlett and Samantha Scarlett." Doc. 1 at 3. And it alleges that over the course of several years, Warrior "repeatedly failed and refused to address widely known systemic deficiencies regarding the use of force" by its officers. Doc. 1 at 3. The court will provide a brief background of the specific incident, then detail the broader allegations against Warrior.

On July 20, 2021, Andrew and Samantha Scarlett stopped and parked at the Huddle House in Warrior during their journey from Tennessee to Florida. Doc. 1 at

3. Warrior police officers Heaton and Pridmore arrived at the Huddle House after an employee reported that one of the Scarletts was "acting very strange." Doc. 1 at 4. Upon their arrival, Heaton and Pridmore contacted Andrew Scarlett and observed that he was "'not making any sense and slurring his words.'" Doc. 1 at 4. Heaton and Pridmore then forcefully removed Scarlett from his vehicle, took him to the ground using an "illegal move," and arrested him for refusing to comply with their directions under Alabama Code § 32-5A-4. Doc. 1 at 4.[1]

Either Heaton, Pridmore, or another Warrior police officer searched the vehicle and discovered Andrew Scarlett's prescription medication. Doc. 1 at 5. Meanwhile, Samantha Scarlett was "illegally searched by a male officer . . . and verbally threatened." Doc. 1 at 6. According to the complaint, the officers on scene later transported Andrew Scarlett to jail, where other officers threatened him and used excessive force against him. Doc. 1 at 6. He received no medical treatment at the jail despite being "visibly hurt" and experiencing medical issues. Doc. 1 at 6.

Based on these events, the Scarletts filed suit against Heaton, Pridmore, and Warrior. Doc. 1. They contend that Warrior "has a long history for illegal arrests, unconstitutional searches and seizures, and excessive force." Doc. 1 at 6. To support

[1] Andrew Scarlett received additional charges—all of which were later dismissed—for public intoxication, obstruction of government operations, and possession of drug paraphernalia. Doc. 1 at 5.

this claim, the complaint identifies two federal lawsuits against Warrior and describes an additional incident involving a use of force during a traffic stop. Doc. 1 at 6.

Based on these factual allegations, the complaint brings six causes of action. Doc. 1 at 7–16. Count One, for excessive force against all defendants, alleges that Warrior's "unconstitutional policies were the driving force" behind Heaton's and Pridmore's actions in July 2021 and that Warrior "knew that [its] customs and practices in failing to discipline and/or educate officers who had used unconstitutional and excessive force would result in more instances of excessive force, serious injury, harm, and/or death." Doc. 1 at 8–9. Count Two, for unlawful search and seizure against all defendants, claims that Warrior is liable under 42 U.S.C. § 1983 because of its "bad policymaking." Doc. 1 at 10. Count Three also states a claim under § 1983 against Warrior[2] and alleges that the city failed in its duty to adopt an adequate policy against excessive force, unlawful searches or seizures, false arrests, or mistreatment of those with medical needs. Doc. 1 at 11–12.

Count Four, for assault and battery against all defendants, alleges that Warrior "is liable under Ala. Code § 11-47-190 because Defendants Heaton and Pridmore's

[2] Counts Three and Four reference the City of Huntsville, not Warrior. Doc. 1 at 11–13. Presumably, counsel copied and pasted this language from a pleading in another lawsuit. The court assumes any reference in the complaint to the City of Huntsville is an allegation about Warrior.

actions were with careless disregard for [the Scarletts'] well-being." Doc. 1 at 13. Count Six[3] alleges false arrest or false imprisonment against all defendants. Doc. 1 at 14. Count Seven, for deliberate indifference to medical needs against Warrior, claims that the city "has a pattern and practice [of] deliberate indifference to serious medical" needs "and knew that [its] custom of not properly responding to such needs would result in constitutional violations and proximate damages." Doc. 1 at 16.

## III. DISCUSSION

### A. Deficient Pleadings

At the outset, the court must address certain deficiencies in the pleadings. As noted, the factual allegations of the complaint are muddled by several typographical errors, such as its references to the City of Huntsville and the exclusion of a Count Five. Doc. 1 at 10–13. In addition, counsel often used the name "Scarlett" or "Plaintiff Scarlett" without differentiating between Andrew Scarlett and Samantha Scarlett.[4] *See, e.g.*, Doc. 1 at 8, 14. Moreover, when Warrior's motion to dismiss attempted to summarize the claims in the lawsuit and to catalog them by the correct plaintiff and legal authorization for the cause of action, Doc. 10 at 3–4, plaintiffs'

[3] The complaint skips from Count Four to Count Six. Doc. 1 at 12–13. The court adopts the numbering system used in the complaint.

[4] In this respect, the complaint exhibits many of the characteristics of a "shotgun pleading." The court therefore will order the plaintiffs to file an amended complaint against the remaining parties in this action.

counsel opted to set forth his "best description" of the case instead of offering a substantive response to Warrior's effort to clarify the claims. *See* Doc. 21 at 2. These issues complicate the analysis in this opinion.

Due to these pleading deficiencies and for transparency, an explanation of the court's approach to analyzing the claims brought against Warrior may be helpful. In the motion to dismiss, Warrior alleges that Count Six is a state-law claim. Doc. 10 at 3. The court disagrees. The complaint states that "[t]his is a Fourth Amendment unconstitutional seizure, excessive force, false imprisonment case as well as deliberate indifference to medical care filed on behalf of Andrew Scarlett and Samantha Scarlett." Doc. 1 at 3. Because of this description and because Count Seven more plainly states a deliberate indifference claim against Warrior, the court considers Count Six to be a § 1983 false arrest claim.

Warrior next contends that Counts One, Two, and Seven are duplicative of Count Three in the complaint. Doc. 10 at 4. The court takes the opposite position—that Count Three is duplicative of Counts One, Two, Six, and Seven because Count Three merely repeats the allegations that Warrior is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), for excessive force, an unlawful search, a false arrest, or a deliberate indifference to medical needs. *See County of Los Angeles, Calif. v. Mendez*, 581 U.S. 420, 429–30 (2017) (explaining that excessive force claims and other Fourth Amendment claims

should be analyzed separately).

In short, the court will address Warrior's arguments that Counts One, Two, Six, and Seven are § 1983 claims due for dismissal. The court also will address Count Four, a state-law claim for assault and battery, to the extent it is stated against Warrior. There is no Count Five, while Count Three is duplicative and due to be dismissed on that basis.

**B. Section 1983 Claims**

Title 42, United States Code, Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To prevail on a claim under § 1983, a plaintiff must show "(1) that the defendant deprived her of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). To hold a governmental entity like Warrior liable under § 1983, a plaintiff must show "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The governmental entity "must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." *Skop v. City of*

*Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95).

In addition, the Eleventh Circuit has defined a policy as "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (internal citations omitted). A custom, on the other hand, "is a practice that is so settled and permanent that it takes on the force of law." *Id.* (citing *Monell*, 436 U.S. at 690–91). "To establish the liability of a municipality based on a custom, 'it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to . . . the municipality.'" *Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 939 (11th Cir. 2008) (quoting *Church v. City of Huntsville*, 30 F. 3d 1332, 1345 (11th Cir. 1994)). For this reason, "'[n]ormally, random acts or isolated incidents are insufficient'" to establish a custom exposing the municipality to liability. *Id.* (quoting *Church*, 30 F. 3d at 1345).

Warrior argues that the complaint fails to state a § 1983 claim because the allegations do not establish that it had a custom, policy, or practice of permitting excessive force, unlawful searches and seizures, false arrests, or deliberate indifference to medical needs. Doc. 10 at 5. The court agrees. The complaint does allege that Warrior has refused to address its "long history for illegal arrests, unconstitutional searches and seizures, and excessive force," along with other

patterns of constitutional violations. Doc. 1 at 3, 6, 8–10, 14, 16. And it alleges, for example, that Warrior's "unconstitutional policies" and "deliberately indifferent customs" were the "driving force behind Heaton and Pridmore's use of excessive force." Doc. 1 at 8–9. But the sole factual support for these boilerplate claims is a reference to three 2015 incidents. Doc. 1 at 6. For the first, the complaint merely lists the case number and parties' names for a federal lawsuit presumably filed under § 1983. Doc. 1 at 6. For the second, the entire allegation is that "Warrior Police shot an unarmed man in the leg after an attempted traffic stop" during April 2015. Doc. 1 at 6. For the third, the complaint alleges that a federal lawsuit arose from an incident during September 2015 when Warrior police officers "unreasonably detained [a citizen] in excess of an hour and then used him as bait in order to catch another suspect." Doc. 1 at 6. Aside from these three incidents, the complaint merely repeats, in several ways, a formulaic recitation of the legal elements for an excessive force cause of action. *See* Doc. 1 at 6–9. These allegations fall short of the pleading requirements for various reasons.

First, three unrelated incidents occurring six years before the plaintiffs' claims cannot establish a "persistent and widespread practice" of condoning excessive force within the Warrior police department as a matter of law. *See Wakefield*, 269 F. App'x at 940 (explaining that two incidents of alleged excessive force, occurring approximately thirteen months apart, are insufficient to establish a custom). This is

especially true when the complaint does not allege that the previous incidents are factually similar to the case at bar or even provide enough detail about the facts of these incidents for the court to draw that inference. *See Pellegrino v. Wengert*, 703 F. App'x 892, 897–98 (11th Cir. 2017) (holding that four prior K–9 excessive force claims against a sheriff's office did not show that it had an unofficial custom of allowing officers to use excessive force); *Connick v. Thompson*, 563 U.S. 51, 62–63 (2011) (holding that the plaintiff failed to show a pattern of constitutional violations to put the defendant on notice of a need for additional training because the prior incidents were not similar to the facts at issue).

Second, while the complaint alleges that there is a "specific policy . . . that Warrior has in place that creates" (Doc. 21 at 5–6) or permits the use of excessive force, plaintiffs' counsel admitted in briefing that he cannot identify that policy before conducting discovery. Doc. 21 at 5–6. This is not enough to survive a motion to dismiss since "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. 662, 678–79 (2009).

Finally, the complaint's bare reference to the three previous incidents does not show that any of these incidents put Warrior on notice of a need to train or supervise its officers in any particular area. *See* Doc. 21 at 4. "Municipal policy or custom may include a failure to provide adequate training if the deficiency "'evidences a deliberate indifference to the rights of its inhabitants.'" *Lewis v. City of W. Palm*

*Beach, Fla.*, 561 F. 3d 1288, 1293 (11th Cir. 2009) (quoting *Gold v. City of Miami*, 151 F. 3d 1346, 1350 (11th Cir. 1998)). For purposes of § 1983, a city may be deliberately indifferent if either (1) the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training; or (2) if the likelihood for constitutional violations is so high that the need for training would be obvious. *Lewis*, 561 F. 3d at 1293. Without allegations that any of the three incidents resulted in a determination that Warrior or its officers violated a citizen's constitutional rights,[5] the complaint here does not establish that Warrior was on notice of a pattern of constitutional violations or that there was a substantial likelihood that constitutional violations would occur. *See Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("In limited circumstances, a local government's decision not to train certain employees . . . to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983" but "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.")); *see also Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (finding "no evidence that city officials were aware of past police misconduct" where the plaintiff

[5] Although not appropriate for consideration on motion to dismiss, Warrior contends that all three incidents were resolved in its or its officers' favor. Doc. 11 at 8–9.

"never demonstrated that past complaints of police misconduct had any merit").[6]

For all of these reasons, the Scarletts have not plausibly alleged that Warrior "had a custom or policy that constituted deliberate indifference to [any] constitutional right; and that the policy or custom caused [any] violation." *McDowell*, 392 F.3d at 1289. Accordingly, Warrior's motion to dismiss the § 1983 claims stated against it in Counts One, Two, Six, and Seven is due to be granted.[7]

### C. State-Law Assault and Battery Claims

The Scarletts also bring a state-law claim for assault and battery against Warrior. Doc. 1 at 12. The complaint alleges assault and battery on behalf of both plaintiffs and stated that Warrior "is liable under Ala. Code § 11-47-190 because Heaton and Pridmore's actions were with careless disregard for [the plaintiffs'] well-being." Doc. 1 at 13. Warrior offers multiple arguments for the dismissal of these claims. *See* Doc. 11.

---

[6] Separately, in opposition to the motion to dismiss, the Scarletts claim that they "plead that Warrior has a policy of making false arrests specifically in the context of false-pretenses traffic stops when no traffic incident exists." Doc. 21 at 4. Although the complaint alleges that Heaton and Pridmore knowingly made a false arrest and acted beyond their authority (Doc. 1 at 8, 10, 14), it makes no mention of any Warrior policy relating to false pretense traffic stops. It is well-settled law that plaintiffs cannot amend their complaint through a brief. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that a plaintiff cannot amend a complaint through a brief); *Brannen v. United States*, 2011 WL 8245026 (N.D. Ga. Aug. 26, 2011) ("Plaintiffs cannot amend their Complaint through their brief in response to the motion to dismiss").

[7] As referenced above, Count Three is due for dismissal because it is duplicative of the other § 1983 claims. Otherwise, it would fail for the same reason.

First, as Warrior noted in its reply in support of the motion to dismiss, the Scarletts did not respond to its arguments for dismissal of this claim. Doc. 27 at 4. Because the Scartletts did not attempt to defend this claim, it is due to be dismissed as abandoned. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Boyd v. Daniels*, 2014 WL 1245885, at *3 (M.D. Ala. Mar. 24, 2014) (dismissing claims on motion to dismiss for failure to respond); *Joseph ex rel. Joseph v. Allen*, 2013 WL 3712334, at *5 (N.D. Ala. July 12, 2013) (same); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (same) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (dismissing undefended claims on summary judgment)); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

Second, even if this claim has not been abandoned, Alabama Code § 11-47-190 immunizes a municipality from suit for injuries caused by its agents unless the injury resulted from the "neglect, carelessness, or unskillfulness" of the agent. *Fowler v. Meeks*, 569 F. App'x 705, 708 (11th Cir. 2014) (internal citations omitted). An assault and battery "can constitute 'unskillfulness' under § 11-47-190 if it 'falls

below the response which a skilled or proficient officer would exercise in similar circumstances.'" *Id.* (quoting *City of Birmingham v. Thompson*, 404 So. 2d 589, 592 (Ala. 1981)). On the other hand, when the facts in the complaint allege deliberate actions akin to intentional torts, the city is entitled to immunity under § 11-47-190. *Id.* (finding municipal immunity at the motion to dismiss stage because the complaint alleged the officers acted intentionally by pulling him from his car, throwing him to the ground with guns pointed at him, and repeatedly kicking him).

The complaint alleges that Heaton and Pridmore forcefully removed Andrew Scarlett from his vehicle and threw him to the ground using an "illegal" technique. Doc. 1 at 4. One of the officers used a taser to stun Andrew Scarlett. Doc. 1 at 4, 7.[8] And the complaint accuses Heaton and Pridmore of knowingly making a false arrest in violation of the Fourth Amendment. Doc. 1 at 10. These facts plainly amount to intentional conduct rather than mere negligence or unskillfulness. *See Brown v. City of Huntsville*, 608 F.3d 724, 742–43 (11th Cir. 2010) (determining that an officer acted intentionally when he decided to use pepper spray during an arrest). Accordingly, the state-law claims for assault and battery against Warrior are due to be dismissed because Warrior is entitled to immunity under § 11-47-190.

[8] It is not clear from the complaint whether Andrew was tased "once" or "several times." *See* Doc. 1 at 4, 7.

### D. Leave to Amend

Although many of the allegations of the complaint are deficient, a district court's discretion to dismiss a complaint without granting leave to amend "is severely restrict[ed]" by Federal Rule of Civil Procedure 15(a), "which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks and citation omitted). Where a more carefully drafted pleading might state a viable claim, a district court ordinarily should allow the plaintiff at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). However, a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Id*. The court finds that none of these factors are present here, and therefore it will allow the Scarletts an opportunity to amend the complaint to attempt to state a claim against Warrior.

## IV. CONCLUSION

For these reasons, it is ORDERED that the motion to dismiss (Doc. 10) is GRANTED, and all claims against the City of Warrior are DISMISSED without prejudice.

In addition, the plaintiffs are ORDERED to file an amended complaint no later than **June 21, 2024.** This amended complaint must be an entire stand-alone complaint and must set forth each and every allegation and claim without reincorporating allegations and claims from any other pleading. Additionally, the amended complaint shall attempt to cure the pleading deficiencies noted in this opinion, including but not limited to (1) clearly stating which plaintiff (or plaintiffs) is bringing which claims; (2) stating whether each claim is brought under state or federal law; (3) omitting any references to "Scarlett" or "Plaintiff Scarlett," and instead referring to the plaintiffs specifically as "Mr. Scarlett" or "Andrew," and "Mrs. Scarlett" or "Samantha"; (4) omitting any references to the City of Huntsville; and (5) correcting any errors in the numbering of paragraphs or causes of action.

DONE and ORDERED on June 7, 2024.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE